<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

```
_____
                               :
ANDRE FAIN,                    :
                               :        Civil Action
            Plaintiff,         :        06-4404 (JAP)
                               :
      v.                       :        O P I N I O N
                               :
EVELYN MORGAN, et al.,         :
                               :
            Defendants.        :
_____:
```

**Joel A. Pisano**, **District Judge**.

The instant matter is before this Court upon remand by the Court of Appeals for the Third Circuit.  This matter originated on October 1, 2006, when Plaintiff Andre Fain ("Fain"), while being a prisoner confined in South Woods State Prison, Bridgeton, New Jersey, submitted for filing a complaint invoking this Court's jurisdiction under 42 U.S.C. § 1983.  See Docket Entry No. 1.  The complaint alleged that, after Fain's parole hearing,[1] two parole officers (Evelyn Morgan and Ruby Washington) "fabricated evidence" and "altered official documents," by writing "'murder' as [Fain's] prior conviction" and adding into Fain's parole file a letter from

---

[1]     Fain's complaint did not clarify the nature of Fain's parole hearing, leaving it open whether the parole hearing was held to deny Fain re-release on parole upon his parole violation or to deny Fain release on parole after a certain period of re-incarceration ensuing from Fain's parole violation.  See generally, Compl.

the Essex County prosecutor opposing Fain's parole.  Id. at 1-2, 5. The Complaint also alleged that the Essex County prosecutor (Judy Gagliano) who prepared the letter opposing Fain's release on parole knowingly stated in her letter that Fain had three "indictable convictions for 'murder,'" which, according to Fain, never occurred.  See id. at 2-6.  Fain's complaint further alleged that, after Fain's parole hearing was completed, another parole officer (Mr. Collazzo) added the word "Essex" into the "Notice of Decision" and, acting with alleged illegality, identified the facts of Fain's parole violation and previous criminal convictions as bases for denial of parole.  See id. at 8.  Finally, Fain's complaint alleged that a public records coordinator (Thomas Renahan) violated Fain's rights when, upon Fain's request, he provided Fain with copies of applicable documents but "chose not to disclose the illegal tampering of official documents to the proper authorities," thus committing "a criminal offense" of "concealment."[2]  Id. at 3, 9.

---

[2]     A private plaintiff cannot force a criminal prosecution because the "authority to initiate a criminal complaint rests exclusively with state and federal prosecutors," Collyer v. Darling, 98 F.3d 211, 222 (6th Cir. 1996); Forney v. Woodridge Hosp. & Johnson City Med. Ctr., 2005 U.S. Dist. LEXIS 37257, at *6 (E.D. Tenn. Sept. 14, 2005); Savage v. Arnold, 403 F. Supp. 172 (E.D. Pa. 1975); Brown v. Duggan, 329 F. Supp. 207 (W.D. Pa. 1971); Spader v. Wilentz, 25 F.R.D. 492 (D.N.J), aff'd, 280 F.2d 422 (3d Cir.), cert. denied, 364 U.S. 875 (1960).  Similarly, a private citizen is without authority to prosecute criminal charges, see United States v. Jarvis, 560 F.2d 494, 497 (2d Cir. 1977); Pokalsky v. SEPTA, 2002 U.S. Dist. LEXIS 16175 (E.D. Pa. Aug. 28, 2002); In re Guyer, 1996 U.S. Dist. LEXIS 17807, at *1 (E.D. Pa. 1996), and a court is without authority to do so on a private plaintiff's behalf, since

Fain's complaint stated the relief he was seeking:

> The Court should find it necessary to order the defendants to retract all falsifications submitted into [Fain's] record. Award [Fain] punitive damages for the illegal acts committed . . . to deny release [on parole]. Because [Fain] has always kept employment [during the periods when he was not imprisoned] and his release on September 13, 2005, was a required release under law and administrative regulations, the Court should also find it reasonable to award [Fain] compensatory damages [for employment income lost as a result of him not being released on parole].

Compl. at 10 (emphasis supplied).

On October 2, 2006, this Court issued an Order and accompanying Opinion dismissing Plaintiff's Complaint without prejudice upon finding that, since a favorable resolution of Fain's claims would necessarily imply the invalidity of his term of imprisonment, the claims were barred by Heck v. Humphrey, 512 U.S. 477 (1994). See Docket Entries Nos. 2 and 3.

On December 20, 2006, the Clerk docketed Fain's motion for reconsideration. See Docket Enter No. 6. The motion asserted, in

---

> [i]t is well established that private citizens can neither bring a direct criminal action against another person nor can they petition the federal courts to compel the criminal prosecution of another person. See Maine v. Taylor, 477 U.S. 131, 137 (1986); Heckler v. Chaney, 470 U.S. 821, 832 (1985); Leeke v. Timmerman, 454 U.S. 83, 86-87 (1981); United States v. General Dynamics Corp., 828 F.2d 1356, 1366 (9th Cir. 1987). Accordingly, the district court [is obligated to] refus[e] fil[ing] criminal charges or . . . compel[ing] prosecution based on those charges.

Ellen v. Stamm, 1991 U.S. App. LEXIS 30558 (9th Cir. Dec. 19, 1991), cert. denied, Montalvo v. Stamm, 506 U.S. 1047 (1993).

pertinent parts, as follows:

> [Fain] suggests that . . . this Court [erroneously]
> characterized [the complaint] as asserting [a challenge
> to Fain's] "parole revocation hearing." . . .
> [A]dmittedly, the complaint could have been clearer [and
> Fain now clarifies his belief that] the actual revocation
> of [Fain's] parole was just.  The issue [which Fain now
> seeks to introduce] is that [Fain] was denied due process
> of law . . . when [the defendants] deprived him of a fair
> parole consideration in a manner [in]consistent with . .
> . the Parole Act of 1979.  [Therefore, Fain now wishes
> to] seek relief that will render invalid the state
> procedures used to deny his parole . . . .  A favorable
> judgment [invalidating such state procedures] will not
> necessarily imply the invalidity of [Fain's term of
> imprisonment, pursuant to the holding of <u>Wilkinson v.
> Dotson</u>, 544 U.S. 74 (2005).  Fain does not want to submit
> this <u>Wilkinson</u> challenge by filing of a new and separate
> § 1983 complaint together] with a request for <u>in forma
> pauperis</u> [application, because he does not want to be
> subjected to another] filing fee of $350.00.[3] . . .
> Wherefore, [he asks] this Court [to] reconsider and
> vacate its order [dismissing Fain's challenges barred by
> <u>Heck v. Humphrey</u>, and re-institute the case as an action
> setting forth a <u>Wilkinson</u> challenge].

<u>Id.</u> at 1-3.  This Court denied Fain's motion, <u>see</u> Docket Entry 8,

and Fain appealed.  Resolving Fain's appeal, the Court of Appeals

observed as follows:

> [In his motion for reconsideration,] Fain concedes that,
> even without the allegedly fabricated evidence, the
> Parole Review Board still could have denied him parole at
> his review hearing. . . .  Accordingly, Fain's
> [application] does not necessarily imply the invalidity
> of his confinement and may be filed pursuant to § 1983.
> <u>See</u> <u>Wilkinson</u>, 544 U.S. at 81.

---

[3]
Inmates filing civil rights complaints and allowed to proceed
<u>in forma pauperis</u> are required to pay their court filing fees in
monthly installments, which are deducted from their prison accounts
(until the fees are fully paid), provided that there are funds
available on these accounts.  <u>See</u> 28 U.S.C. § 1915(b).

<u>Fain v. Morgan</u> ("<u>Fain-Appellate</u>"), 2007 U.S. App. LEXIS 27548, at *2-3 (3d Cir. Nov. 28, 2007).  Consequently, the Court of Appeals vacated this Court's decision and remanded the matter, directing this Court to address Fain's claim set forth in his motion for reconsideration, <u>i.e.,</u> his <u>Wilkinson</u> claim for injunctive relief in the form of "a new parole hearing without the [allegedly] fabricated evidence and illegally altered documents."  See <u>Fain-Appellate</u>, 2007 U.S. App. LEXIS 27548, at *3; <u>accord</u> Docket Entry No. 6 (Fain's Motion) at 3 ("[s]uccess for [Fain] does not mean immediate release from confinement or a shorter stay in prison; it means at most a new parole hearing without the fabricated evidence and illegally altered documents at which the Parole Board may . . . decline to shorten his prison term").

The Court of Appeals issued its decision on November 15, 2007.  See <u>Fain-Appellate</u>, 2007 U.S. App. LEXIS 27548.  The next day, on November 16, 2007, Fain's prison term fully expired and he was released.  See <<https://www6.state.nj.us/DOC_Inmate/details?x=1057262&n=0>>; <u>accord</u> Docket Entry No. 24, ¶ 4; Docket Entry No. 30 at 1, 3.  On December 10, 2007, Fain executed his Notice of Change of Address, informing the Clerk of his release from confinement and the fact that his residence changed from South Woods State Prison to his current private address in Newark.  See Docket Entry No. 20. In view of his release from confinement, Fain's request for a new

parole hearing appeared illogical.[4]   Consequently, this Court allowed Fain to file an amended complaint: (a) elaborating on Fain's claims, if any, for injunctive relief and/or compensatory damages that he was still seeking after his release from confinement, as well as (b) detailing the basis for such claims. See Docket Entry No. 26.  The Court's order directing the amended complaint provided Fain with seven guideline questions aiming to determine the nature of his current claims.  See id.

On February 4, 2008, Fain executed his amended complaint.  See Docket Entry No. 30.  The amended complaint is a seven-page document beginning with four numerated paragraphs on the first page, and then proceeding as a narrative.  See id.  The first two paragraphs on the first page read as follows:

> (1)  Jurisdiction is asserted pursuant to 42 U.S.C. § 1983.
> (2)  Plaintiff has brought a previous Civil Action on this matter[,] which was dismissed[,] and that decision was vacated by the United States Court of Appeals for the Third Circuit.

Id. at 1.  The next two paragraphs appear to be Fain's responses to two of the seven questions posed by this Court (other questions remained unaddressed or addressed in part).  Specifically, Fain

---

[4]   A remedy in the form of an order determining what the *outcome* of Fain's parole review hearing should have been had that parole review hearing been conducted "without the [allegedly] fabricated evidence and illegally altered documents" would automatically transform the instant § 1983 matter into a habeas proceeding, rather than invoking a Wilkinson inquiry of whether a curative parole hearing should be held.

Page  -6-

states that: (a) he "has been released"; and (b) he is now

> challeng[ing] the parole hearings and/or documents of:
> - Initial Hearing Case assessment date of May 13, 2005 Defendant Evelyn Morgan.
> - Adult Panel Hearing date July 12, 2005 defendants Ruby Washington and Heriberto Collazo.[5]
> - Parole Board OPRA Records documents Request #C17487 date November 4, 2005 Defendant Thomas Renahan.
> - Parole Board Appeals Unit Amended documents dates December 14, 2005, January 30, 2006, and March 13, 2006.
> - Essex County Prosecutor letter dated May 19, 2005 Defendant Judy Gagliano.

Id. at 1-2.[6]

## STANDARD OF REVIEW

In determining the sufficiency of a complaint, the Court must be mindful to construe the facts stated in the complaint liberally in favor of the plaintiff.  See Haines v. Kerner, 404 U.S. 519 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court should "accept as true all of the [factual] allegations in the complaint and reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  While a court will accept well-pled allegations as true, it will not accept bald assertions, unsupported conclusions,

---

[5]

This Court presumes that "Mr. Colazzo" identified in Fain's original complaint is the same individual as "Heriberto Collazo" identified in Fain's amended complaint.

[6]

In view of the above-discussed complex previous history of the instant litigation, all quotations from Fain's amended complaint included in the instant Opinion are provided verbatim.

unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations.  See id.

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief, 'in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957), while abrogating the decision in other respects).

The Court of Appeals for the Third Circuit recently provided a detailed and highly instructive guidance as to what kind of allegations qualify as pleadings sufficient to pass muster under the Rule 8 standard.  See Phillips v. County of Allegheny, 515 F.3d 224, 230-34 (3d Cir. 2008).  The Court of Appeals explained:

> [There are] two new concepts in Twombly.  First, . . . [t]he [Twombly] Court explained that "[w]hile a complaint . . . does not need detailed factual allegations, a plaintiff's [Rule 8] obligation to provide the 'grounds' of his 'entitle[ment]' to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 127 S. Ct. at 1964-65 . . . .  The Court explained that Rule 8 "requires a 'showing,' rather than a blanket assertion, of entitlement to relief." Id. at 1965 n.3.  Later, the Court referred to "the threshold requirement of Rule 8(a)(2) that the 'plain statement' possess enough heft to 'sho[w] that the pleader is entitled to relief.'" Id. at 1966.  The Court further explained that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965 & n.3.
> Second, the Supreme Court disavowed certain language that it had used many times before -- the "no set of facts" language from Conley.  See id. at 1968. . . . As

the Court instructed, "[t]his phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." <u>Twombly</u>, 127 S. Ct. at 1969.

[T]he <u>Twombly</u> decision focuses our attention on the "context" of the required short, plain statement. Context matters in notice pleading. . . . [Thus,] taking <u>Twombly</u> and the Court's contemporaneous opinion in <u>Erickson v. Pardus</u>, 127 S. Ct. 2197 (2007), together, we understand the Court to instruct that a situation may arise where, at some point, the factual detail in a complaint is so undeveloped that it does not provide a defendant the type of notice of claim which is contemplated by Rule 8. <u>See Airborne Beepers & Video, Inc., v. AT&T Mobility L.L.C.</u>, 499 F.3d 663, 667 (7th Cir. 2007). Put another way, in light of <u>Twombly</u>, Rule 8(a)(2) requires a "showing" rather than a blanket assertion of an entitlement to relief. [Hence,] without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only "fair notice," but also the "grounds" on which the claim rests. <u>See Twombly</u>, 127 S. Ct. at 1965 n.3.

The second important concept . . . is the rejection of Conley's "no set of facts" language [which became] problematic because, for example, it could be viewed as requiring judges to speculate about undisclosed facts. . . . After <u>Twombly</u>, it is no longer sufficient to allege mere elements of a cause of action; instead "a complaint must allege facts suggestive of the proscribed conduct." <u>Id.</u> . . . The Court [however,] emphasized . . . that it was neither demanding a heightened pleading of specifics nor imposing a probability requirement. <u>See id.</u> at 1964, 1965, 1973 n.14, 1974; [accord] <u>Erickson</u>, 127 S. Ct. at 2200.

The more difficult question raised by <u>Twombly</u> is whether the Supreme Court imposed a new "plausibility" requirement at the pleading stage that materially alters the notice pleading regime. . . . The Court explained that a plaintiff must "nudge [his or her] claims across the line from conceivable to plausible" . . . . 127 S. Ct. at 1974. . . . "Plausibility" is related to the requirement of a Rule 8 "showing." [Thus, while the court cannot] dismiss[] . . . a well-pleaded complaint simply because "it strikes a savvy judge that actual proof of those facts is improbable," the "[f]actual allegations must be enough to raise a right to relief

above the speculative level." Id. at 1965. [T]he
pleading standard can be summed up thus: "stating . . .
a claim requires a complaint with enough factual matter
(taken as true) to suggest" the required element. Id.
This "does not impose a probability requirement at the
pleading stage[]" but . . . "calls for enough facts to
raise a reasonable expectation that discovery will reveal
evidence of" the necessary element. Id.

Phillips, 515 F.3d at 230-34 (internal editing marks omitted).

## DISCUSSION

### I.   CIVIL RIGHTS AND HABEAS ACTIONS

Federal prisoner litigation most often arises under either 42
U.S.C. § 1983, or the federal habeas corpus statute, 28 U.S.C. §
2254. Section 1983 provides a remedy for all persons in the United
States who suffered constitutional deprivations at the hands of a
person acting "under color" of state law, see 42 U.S.C. § 1983,
while the habeas statute provides, in part, that "[a] district
court shall entertain an application . . . of a person [who is] in
custody pursuant to the judgment of a State court [asserting that
this person] is in custody in violation of the Constitution." 28
U.S.C. § 2254.

Although the federal habeas corpus statute and § 1983 are the
two primary mechanisms that prisoners use to challenge violations
of their constitutional rights, most prisoners prefer to sue under
§ 1983 because habeas relief requires prisoners to exhaust all
state remedies, and damage awards are not available in habeas
relief. See, e.g., Ex Parte Royall, 117 U.S. 241, 251 (1886); see
also Patsy v. Bd. of Regents of Fla., 457 U.S. 496, 501 (1982).

However, despite the apparent applicability of § 1983 to a prisoner's lawsuit, the sole federal remedy for a prisoner challenging "the fact or duration of his confinement" is habeas corpus because allegations of wrongful confinement go to the "core of habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 489 (1973).

A.   **The Preiser-Heck Bar**

In a series of cases beginning with Preiser, 411 U.S. 475 (1973), the Supreme Court analyzed the intersection of 42 U.S.C. § 1983 and 28 U.S.C. § 2254. In Preiser, state prisoners who had been deprived of good-conduct-time credits by the New York State Department of Correctional Services as a result of disciplinary proceedings brought a § 1983 action seeking injunctive relief to compel restoration of the credits, which would have resulted in their immediate or speedier release. See id. at 476. The prisoners did not seek compensatory damages for the loss of their credits. See id. at 494. Assessing the prisoners' challenge, the Supreme Court announced an exception to the broad language of § 1983 and held that a prisoner must bring a suit for equitable relief that, effectively, challenges "the fact or duration of confinement" as a habeas corpus petition. See id. at 500.

In Heck v. Humphrey, 512 U.S. 477 (1994), the Court addressed a corollary question to that presented in Preiser: whether a prisoner could challenge the constitutionality of his conviction in a suit for damages under § 1983 because this form of relief is not

available through a habeas corpus proceeding.  The Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

Id. at 486-87 (footnote omitted).

The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed . . . .

Id. at 487 (footnotes omitted).

More recently, in Edwards v. Balisok, 520 U.S. 641 (1997), the Supreme Court applied the lessons of Preiser and Heck to a state prisoner action, where the prisoner was: (a) seeking compensatory

and punitive damages, challenging the constitutionality of procedures used in a prison disciplinary proceeding that resulted in the loss of good-time credits, but (b) asserting that he was neither necessarily challenging the result of that disciplinary proceeding, nor seeking the restoration of the good-time credits. The Court, however, emphasized that such a claim was not cognizable under § 1983, since a favorable outcome would necessarily imply the invalidity of the deprivation of good time credits.  See id. at 646-48 (holding that allegations of "deceit and bias on the part of the decision maker," if successful, would "necessarily imply the invalidity of the deprivation of good time credits").

Thus, for example, when a dispute "goes *only* to the manner in which the Board has considered plaintiff's parole, and [when] plaintiff does not claim that the review process must actually lead to his parole or to [at least] an earlier parole eligibility date, plaintiff's claim may proceed under 42 U.S.C. § 1983." Johnson v. Fauver, 786 F. Supp. 442, 445 (D.N.J.) (emphasis supplied), aff'd, 970 F.2d 899 (3d Cir. 1992); see also Georgevich v. Strauss, 772 F.2d 1078, 1086 (3d Cir. 1985), cert. denied, 475 U.S. 1028 (1986) (suit properly brought under § 1983 when it sought *only* the equal application of statutory furlough eligibility criteria, not plaintiff's release from incarceration).  By contrast, where a prisoner asserts that he was *unduly denied* parole, the prisoner's claims are barred by Heck v. Humphrey, even if the prisoner asserts

that the Parole Board reached the allegedly erroneous decision as a result of an untimely or procedurally deficient parole hearing. See Poole v. DOC, 153 Fed. App. 816, 818 (3d Cir. 2005) (since the prisoner's "attack on the integrity of the decision to deny parole necessarily implicates the validity of the parole decision, and he has not shown that the decision has been invalidated").

**B.   Wilkinson v. Dotson**

While the Supreme Court expanded the Preiser exception to § 1983 prisoner litigation to all claims in which the prisoner's success would "necessarily demonstrate[] the invalidity of the conviction," Heck v. Humphrey, 512 U.S. at 481-82, in Wilkinson v. Dotson, 544 U.S. 74 (2005), the Court limited the exception when it held that a prisoner may pursue a § 1983 claim challenging the constitutionality of parole eligibility *procedures*.

In Wilkinson, two state prisoners, William Dwight Dotson and Rogerico Johnson, filed separate § 1983 suits against the state parole authority alleging that state parole procedures violated their constitutional rights.[7]  Both Dotson and Johnson were seeking

---

[7]

A trial court sentenced Dotson to life in prison in 1981, when the state law provided that Dotson must serve fifteen years before he was eligible for parole.  The Parole Board did not release Dotson at his first parole hearing in 1995, postponed his second hearing for ten years, and scheduled a halfway review for the year 2000.  Meanwhile, in 1998, the legislature enacted new parole guidelines that differed from the guidelines in force when a court convicted Dotson.  At his halfway review in March 2000, the Parole Board applied these new guidelines and ruled that Dotson must serve 32.5 years (rather than fifteen years) to be eligible for parole.

only injunctive and declaratory relief--specifically, an invalidation of the provisions on which the state parole eligibility *procedures* were based.  See id.  The district court construed the prisoner's applications as quasi-habeas actions, but the appellate court reversed.

     Affirming the appellate court, the Supreme Court held that prisoners were not limited to habeas relief if they challenge the constitutionality of state parole eligibility *procedures* because success on the merits of such actions "would not necessarily spell speedier release" and does not go to "the core of habeas corpus." Wilkinson, 544 U.S. at 81-82 (quoting Preiser v. Rodriguez, 411 U.S. at 489).  The Court articulated a concise rule encompassing all prior case law concerning prisoner litigation under § 1983:

> A state prisoner's § 1983 action is barred (absent prior invalidation) - no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct lead to conviction or internal prison proceedings) - if success in that action would necessarily demonstrate the invalidity of confinement or duration.

Id.

     The Court then rejected the state's contention that the

---

     Rogerico Johnson entered prison in 1992 to serve a ten to thirty year sentence.  Only one board member presided at Johnson's parole hearing, Johnson was not permitted to verbally address the board member, and the board member's decision to deny Johnson parole relied on two alleged convictions that the State did not pursue against Johnson.  Additionally, the Parole Board applied the 1998 guidelines that were not in effect when the trial court convicted Johnson.

prisoners were necessarily challenging their confinement simply because their ultimate goal was to be released from prison sooner. See id. at 83.  The Court held that forcing the Parole Board to consider another parole application from the prisoners would not necessarily affect the prisoner's terms of incarceration.  The Court reasoned that the right to release from incarceration was not implicated in a prisoner's challenge to purely procedural deficiencies because the Board still had discretion not to grant parole after employing correct procedures.  See id. at 83-87.  In sum, the key distinction between Wilkinson and Heck is the distinction between a prisoner's application for equitable (and, perhaps, nominal but--in no event--compensatory) relief challenging allegedly unconstitutional *procedures* used to consider him for parole (since a corrective measure would be a constitutionally proper procedure that might yield a substantive outcome identical to that reached as a result of defective procedure) and a prisoner's application seeking *any* form of relief while challenging an allegedly unconstitutional *denial* of either parole or a shorter term (since a corrective measure necessarily results in an immediate or speedier release).

## II. PLAINTIFF'S ALLEGATIONS STATED IN HIS AMENDED COMPLAINT

### A.   Claims Challenging Denial of Parole

Fain clearly challenges the outcome of his parole hearings, i.e., the Parole Board's substantive *decision*s (rather than the

procedure used) to deny Fain parole and imposition of a longer
future parole eligibility term.   Fain's allegations read as
follows:

> These events allowed the hearing officers to impose *an
> excessive 18 month future eligibility term* . . . .
> Absent the improper use of plaintiff's record and absent
> the use of manufactured evidence, the parole board and
> hearing officers are confined in plaintiff's case to
> identify plaintiff as technical parole violator.  Board
> Policy and law under this criteria confines the parole
> board and hearing officers on May 13, 2005 and July 12,
> 2005 to *either release on parole* with conditions if
> desirable, or, denial of parole and *no more than a 12
> month future eligibility term where he would have served
> 3 to 4 months of the 12 months before his next parole
> consideration hearings* with a possibility of being
> paroled to a halfwayback, once plaintiff had served the
> initial revocation of parole imposition imposed in
> December of 2004. . . . [P]laintiff was not afforded the
> opportunity of his right to a fair and legal parole
> consideration hearing and he *was basically directed by
> the parole board to serve three additional 18 month
> future eligibility terms* on top of the initial 15 month
> revocation of parole causing him to max his sentence . .
> . . Plaintiff in early 2006 lost his cousin by death who
> also was plaintiff's landlord where he was living before
> he was returned to custody on November 12, 2004.
> Plaintiff was subjected to the mental and physical
> indifference of family members removing and/or discarding
> plaintiff's furniture, clothing and appliances after his
> cousin had past where his mother was paying the cousin to
> store these belongings until he gets home.  Plaintiff has
> held employment ever since 1999-2004[8] the times in the
> halfwayhouses and on parole while in society providing
> for himself.  Plaintiff was making up to $11.00 an hour
> at one job and up to $12.00 an hour at another job
> driving with his CDL.  *Plaintiff may have been able to*

---

[8]     Fain's prison record indicates the following incarceration
history: (1) in-custody 03/17/1989, out-of-custody 9/18/2001; (2)
in-custody 9/11/2003, out-of-custody 12/18/2003; (3) in-custody
12/2/2004, out-of-custody 11/16/2007. <u>See</u> <<https://www6.state.nj.
us/DOC_Inmate/details?x=1057262&n=0>>.

*return to one of the various job locations if he was allowed a proper parole hearing in which release on parole may have been possible*, either September of 2005 or either May or June of 2006.   Now plaintiff is suffering from the amount of time without employment every time plaintiff submits an employment application for a job which he has to *explain the three year gap*. *Plaintiff may have also been able to gather some of his belongings* if not all before his family members removed them from the location he was living at after his cousin has past if the possibility of being paroled was a fair and legal process.   *The issue in this matter should have been a technical issue* which constitutes under Board Policy, title 30 the parole Act and Administrative Code parole, that plaintiff has not committed no new crimes, plaintiff only present offense was the admission to a dirty urine, and that he has successfully maintained employment and reported on parole dates as directed, he has also successfully maxed out his two robberies and three weapons possession convictions without any further events near compatible. . . .   The Court should also find it appropriate to award plaintiff punitive damage, compensatory and injunctive damages based on the actions and/or inactions of the defendants willful conduct against plaintiff to cause and create *a harsher punishment* . . . .

Docket Entry No. 30, at 4-7 (emphasis supplied).

These claims are subject to dismissal without prejudice, pursuant to the holding of <u>Heck v. Humphrey</u>.   Fain's amended complaint maintains that, because he was wrongfully qualified, for the purposes of parole assessment, as a convicted parole violator (or as a technical-and-convicted parole violator) rather than a purely-technical violator, the Parole Board necessarily reached a wrongful decision to deny him immediate release or a shorter future parole eligibility term.   However, such allegations are qualitatively different from Fain's <u>Wilkinson</u>-based claim raised in his motion for reconsideration (asserting that, under proper

procedures, the Parole Board could exercise its discretion and deny
Fain parole or impose a longer future parole eligibility term).
Indeed, Fain's express statements that he should have been either
released or ordered to serve only a 3-to-4 month term, same as his
usage of such phrases as "excessive term" and "harsher punishment,"
and his claim that he was wrongfully forced to "serve three
additional 18 month" terms, suggest a challenge to the Parole
Board's decision to deny him parole or to impose a longer future
parole eligibility term.

Even more enlightening are Fain's explanations as to what
relief he is now seeking and why he is entitled to that relief.  In
no ambiguous terms, Fain asserts three types of injuries: (1) his
inability to earn income during the period of his imprisonment,
which ensued from the denial of parole or speedier release; (2) his
inability to collect (during the period of his imprisonment, which
ensued from the denial of parole or speedier release) his
belongings from his pre-revocation-of-parole place of abode; and
(3) his need to justify to potential employers his three-year-long
gap in employment, which ensued from the denial of parole or
speedier release.  It appears that Fain's allegations, especially
if they are read in light of his focus on compensatory damages
unavailable under Wilkinson, suggest only one type of challenge,
i.e., a challenge to the Parole Board's decision to deny Fain
immediate or speedier release.  However, this challenge is barred

by Heck v. Humphrey, which explained that § 1983 actions cannot be brought until and unless the litigant obtains a judicial order stating that the underlying decision (denying immediate or speedier release) is, in fact, overturned or otherwise invalidated, or called into question by the issuance of a writ of habeas corpus.[9] For these reasons, Fain's amended complaint will be dismissed, without prejudice, with respect to Fain's line of allegations calling in question various aspects of the decision reached by the Parole Board as to whether and/or when Fain should have been released on parole.   See Poole v. DOC, 153 Fed. App. at 818; Butterfield v. Bail, 120 F.3d at 1024; accord Edwards v. Balisok, 520 U.S. 641 (1997).

     **B.** ***Wilkinson* Claims**

Although Fain's amended complaint contains an abundance of challenges with respect to the outcome of his parole hearing and extensive elaborations as to the basis for Fain's belief that he is entitled to compensatory damages for the period of his imprisonment, which ensued from the denial of parole or speedier release, the amended complaint is void of any requests resembling,

---

[9]

    It is self-evident that a person cannot *simultaneously* be in prison and yet earn wages for an out-of-prison employ, same as a person cannot *simultaneously* be in confinement and yet collect his belongings in an out-of-prison location.   Similarly, it is impossible to *simultaneously* claim that the Parole Board could have been justified in holding a person in prison for a certain period of time and yet allege that this person suffered an injury in the form of not having a shorter period of imprisonment on his resume.

even remotely, Fain's request set forth in his motion for reconsideration, i.e., an application for injunctive relief in the form of a mandate directing, "at most, a new parole hearing."  See generally, Docket Entry No. 30.   This silence is particularly striking in view of the Court's question (posed in the order directing Fain to amend his original complaint) reading:

> Does Plaintiff seek any injunctive relief?  If yes,
> Plaintiff shall clarify what specific relief is sought
> and the alleged ground for such relief.

Docket Entry No. 26, at 3.  In view of the foregoing, the amended complaint suggests that Fain elected to withdraw his Wilkinson-based claim.  However, this conclusion is uncertain in light of the facts that: (a) the Court of Appeals' remand was expressly based upon and solely limited to Fain's Wilkinson-based claim stated in Fain's motion for reconsideration, see Fain-Appellate, 2007 U.S. App. LEXIS 27548, at *3; and (b) Fain expressly opened his amended complaint with the statement "Plaintiff has brought a previous Civil Action on this matter[,] which was dismissed[,] and that decision was vacated by the United States Court of Appeals for the Third Circuit."  Docket Entry No. 3, ¶ 2, at 1.  Because it is equally plausible that Fain wished to either implicitly re-assert Wilkinson claims or to withdraw them, this Court presumes that Fain intended to re-assert these claims and, hence, examines them accordingly.

Fain names, as defendants, three parole officers, a prosecutor

and a record custodian.  Fain, however, could not bring a
Wilkinson-based challenge against either the prosecutor or the
record custodian.  The actions of a prosecutor submitting for the
parole board's consideration the prosecutor's opposition to an
inmate's parole, in addition to the actions of the person keeping
custody of the official records (including, inter alia, the records
deposited by the parole board upon conclusion of proceedings), fall
outside the scope of Wilkinson: neither the prosecutor nor the
record custodian conduct parole proceedings and, thus, they could
not be liable for procedural deficiencies, if any, infesting a
parole hearing.  Consequently, Fain's Wilkinson-based due process
claims can lie neither against Gagliano, the Essex County
prosecutor who opposed Fain's parole, nor against Renahan, a
custodian of all official records.[10]  At most, Fain could assert

---

[10]

Moreover, regardless of the limitations ensuing from the scope
of Wilkinson, defendant-prosecutor Gagliano is immune from § 1983
liability for the statements she made in her opposition to Fain's
release on parole.  Under federal law, a state prosecutor is
absolutely immune from liability for alleged § 1983 civil rights
violations committed  in the course of "initiating a prosecution
and [for, later on,] presenting the State's case."  Imbler v.
Pachtman, 424 U.S. 409, 431 (1976); see also Burhman v. Wilkinson,
2003 U.S. Dist. LEXIS 10038, at *49-50 (S.D. Ohio Feb. 7, 2003)
("absolute immunity bars [p]laintiff's § 1983 claims against the .
. . prosecutors . . . asserti[ng] that these [d]efendants . . .
sen[t] false and unfavorable information to the Parole Board . . .
by participating in a conspiracy to keep [the plaintiff]
incarcerated 'the longer the better,' . . . [b]ecause these alleged
activities . . . [are] intimately connected with [d]efendant
[p]rosecutors' roles as advocates") (citing, inter alia, Pinaud v.
County of Suffolk, 52 F.3d 1139, 1149-50 (2nd Cir. 1995) (absolute
immunity bars claims based on false representations to Bureau of
Prisons); Johnson v. Kegans, 870 F.2d 992, 997-98 (5th Cir. 1989)

Wilkinson-based due process claims only against those defendants who actually conducted his parole hearings, that is the Parole Board Officers Morgan, Washington, and Collazzo.

Nevertheless, these Wilkinson-based claims are wholly moot at the instant juncture because Fain has been released from custody.[11]

_____

(prosecutor's statements to Parole Board protected by absolute immunity)).

Similarly, if this Court examined Fain's claims against record custodian Renahan without regard to the limitations ensuing from the scope of Wilkinson, Fain's allegations fail to state a claim. As stated supra, Fain's original claim that Renahan should be criminally prosecuted for his refusal to notify authorities of alleged falsifications noticed by Fain does not merit the requested remedy. See this Opinion, note 2. It appears that Fain, in his amended complaint, abandoned that claim and substituted it for the allegation that Fain "made Renahan aware of the alterings but he failed to provide an explanation nor did [Fain] receive anything from him at a later date implying that any type of action is being taken." Docket Entry No. 30, at 4. Prisoners, however, do not have a constitutional right to obtain a reply to their grievances. See Pascalli v. O'Grady, 2007 U.S. Dist. LEXIS 78383, at *7 (D.N.J. Oct. 22, 2007) (citing Travillion v. Leon, 2007 U.S. App. LEXIS 22203 (3d Cir. Sept. 14, 2007)); see also Overholt v. Unibase Data Entry, Inc., 221 F.3d 1335 (Table), 2000 WL 799760, *3 (6th Cir. 2000) ("The defendants [record keepers] were not obligated to respond to [an inmate's] grievances because there is no inherent constitutional right to an effective prison grievance procedure").

[11]

In addition, the Court notes that it is highly questionable whether Fain's allegations adequately state a procedural claim. Fain's original and amended complaint indicate that his allegations are two-fold: (1) he states that the Parole Board did not have the right to consider his entire criminal history in reaching its decision, see Docket Entry No. 30, at 2; accord Docket Entry No. 1, at 5-8; and (2) he maintains that, to justify the decision to deny him parole, Washington, after the parole hearing, added a "conviction for murder under the title of 'Summary of Prior Convictions[,]'" Docket Entry No. 30, at 3; accord Docket Entry No. 1, at 2, 7.

Fain's first allegation is clearly without merit. Under the 1979 Parole Act, N.J.S.A. 30:4-123.45, et seq., the Parole Board is entitled to consider the entire evidentiary basis available. See

Oliver v. N.J. State Parole Bd., 2007 U.S. Dist. LEXIS 21136
(D.N.J. Mar. 26, 2007) (holding parole board may consider inmate's
entire criminal record, regardless of whether inmate committed
his/her offenses before or after enactment of 1997 Amendment to
1979 Act), certif. denied, No. 07-2261 (3d Cir. Aug. 30, 2007).

Fain's allegations that the Parole Board violated his
procedural rights when it attempted to *justify*, post-factum, its
decision to deny him parole by adding into his file a notation
suggesting existence of an allegedly false "conviction for murder,"
appear to pose a habeas rather than Wilkinson challenge.  There is
no federal constitutional right to parole, although states may
create a parole entitlement protected by the Due Process Clause.
See Greenholtz v. Inmates of Neb. Penal & Corr'l Complex, 442 U.S.
1, 7 (1979); Prevard v. Fauver, 47 F. Supp. 2d 539, 545 (D.N.J.),
aff'd, 202 F.3d 254 (3d Cir. 1999).  The New Jersey parole statute
contains language creating an expectation of parole eligibility
entitled to some measure of due process protections.  See Williams
v. New Jersey State Parole Bd., 1992 U.S. Dist. LEXIS 2284 (D.N.J.
Feb. 4, 1992), aff'd, 975 F.2d 1553 (3d Cir. 1992); New Jersey
State Parole Bd. v. Byrne, 93 N.J. 192 (1983).  If a State had
created such liberty interest, the State meets its obligation by
merely requiring notice of the parole eligibility hearing and an
opportunity for the inmate to appear at that hearing and present
statements and letters on his/her own behalf, plus a statement
informing him/her why parole was denied.  See Greenholtz, 442 U.S.
at 14-16.

While an inmate might have a due process right not to be
assessed for parole on the basis of information that is materially
false, cf. Williams v. Fed. Bureau of Prisons & Parole Comm'n, 85
Fed. App. 299 (3d Cir. 2004) (assuming, arguendo, that "[i]n
certain limited circumstances a claim of constitutional magnitude
is raised where a prisoner alleges: (1) that information is in his
file, (2) that the information is false, and (3) that it is relied
upon to a constitutionally significant degree") (quoting Paine v.
Baker, 595 F.2d 197, 201 (4th Cir. 1979)), such right is protected
by affording the inmate notice of and an opportunity to respond to
the false information.  Accord United States v. Tucker, 404 U.S.
443 (1972); Townsend v. Burke, 334 U.S. 736 (1948); Moore v. United
States, 571 F. 2d 179 (3d Cir. 1978); Jackson v. Myers, 374 F. 2d
707 (3d Cir. 1967).  Conversely, where the inmate alleges that he
was first wrongfully denied parole and, following such denial, the
parole board supplemented his prison file by false information in
its attempt to justify its decision, the inmate's procedural rights
are not implicated, since there could have been no notice of and
opportunity to respond to a false information entered post-hearing.
Such allegations pose a challenge to the original decision to deny

A mootness inquiry asks whether a claimant's standing
continues throughout the litigation.  "A case is moot
when the issues presented are no longer live or the
parties lack a legally cognizable interest in the
outcome."  <u>Donovan v. Punxsutawney Area School Bd.</u>, 336
F.3d 211, 216 (3d Cir. 2003) (citation omitted).  "The
court's ability to grant effective relief lies at the
heart of the mootness doctrine."  <u>Id.</u>  "That is, if
developments occur during the course of adjudication that
eliminate a plaintiff's personal stake in the outcome of
a suit or prevent a court from being able to grant the
requested relief, the case must be dismissed as moot."
<u>Id.</u>; <u>see</u> <u>also</u> <u>Green v. Branson</u>, 108 F.3d 1296, 1299 (10th
Cir. 1997) ("The touchstone of the mootness inquiry is
whether the controversy continues to touch the legal
relations of parties having adverse legal interests in
the outcome of the case") (citation omitted).  "The
*crucial question is whether 'granting a present
determination of the issues offered . . . will have some
effect in the real world.'"* <u>Utah Animal Rights Coalition</u>
<u>v. Salt Lake City Corp.</u>, 371 F.3d 1248, 1256 (10th Cir.
2004) (alterations in original) (citations omitted).

<u>Policastro v. Kontogiannis</u>, 2008 U.S. App. LEXIS 1387, at *10-11

(3d Cir. Jan. 24, 2008) (emphasis supplied).  Indeed, it would be

entirely anomalous to hold a <u>Wilkinson</u>-based litigation in which

Fain, if fully successful, would obtain the remedy he requested in

his motion for reconsideration, a curative parole hearing, but a

remedy that Fain cannot achieve because there could be no parole

hearing for a person whose sentence has fully expired.[12]

---

parole on the basis of the information actually presented to the
parole board and, pursuant to <u>Heck</u>, are barred until the inmate
secures a judicial order invalidating the parole board's decision
to deny parole.

[12]

    The "capable of repetition yet evading review" exception to
mootness, <u>see</u> <u>e.g.</u>, <u>Sugzdinis v. Spang</u>, 957 F.2d 1108, 1113-15 (3d
Cir. 1992), does not apply here.  "This extremely narrow exception

## C.  Conditions of Confinement Claim

In his amended complaint, Fain adds an allegation previously unstated in his original complaint or in his motion for reconsideration.  That allegation reads as follows:

> Plaintiff was not allowed to spend or save his monthly earnings while in South [W]oods Prison because no remedy for this matter was provided by the New Jersey State Parole Board so he had no choice but to address this matter to the proper courts utilizing legal copy and legal mail loans that exceeded his monthly earnings each month.  Plaintiff was subjected to the mental and physical indifference by asking other inmates for hygiene products because of his financial problems placing his self at risk borrowing from another inmate.

Docket Entry No. 30, at 5-6.  Liberally construing the foregoing passage, this Court interprets it as suggesting that Fain seeks to state a conditions of confinement claim.

The Eighth Amendment prohibits infliction of cruel and unusual punishment, thus mandating prison officials to provide humane conditions of confinement.  The Constitution, however, "does not

---

to the mootness doctrine is applicable only where: (1) the challenged action is too short in duration to be fully litigated before the case will become moot; and (2) there is a reasonable expectation that the complaining party will be subjected to the same action again."  Donovan v. Punxsutawney Area Sch. Bd., 336 F.3d 211, 217 (3d Cir. 2003) (citing Weinstein v. Bradford, 423 U.S. 147 (1975)).  Here, there cannot be a "reasonable" expectation of Fain facing another parole board and needing a curative parole review hearing as he has been released from incarceration and faces no pending charges.

Finally, while Fain's suit survives a justiciability challenge with respect to his claims for damages, see Jersey Cent. Power & Light Co. v. New Jersey, 772 F.2d 35, 41 (3d Cir. 1985) ("[T]he availability of damages or other monetary relief almost always avoids mootness"), Fain's claims for damages are barred by Heck and, hence, are subject to dismissal, without prejudice.

mandate comfortable prisons[.]" Rhodes v. Chapman, 452 U.S. 337, 349 (1981). Prison officials must merely ensure that inmates receive adequate food, clothing, shelter and medical care, plus must take reasonable measures to guarantee the safety of the inmates. See Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

To state a claim under the Eighth Amendment, an inmate must allege both objective and subjective components. See Wilson v. Seiter, 501 U.S. 294, 298 (1991). The objective component mandates that "only those deprivations denying 'the minimal civilized measure of life's necessities' . . . are sufficiently grave to form the basis of an Eighth Amendment violation," Helling, 509 U.S. at 32 (quoting Rhodes v. Chapman, 452 U.S. at 346), hence requiring that the deprivation sustained by a prisoner be "extreme deprivations." Hudson v. McMillian, 503 U.S. 1, 9 (1992). The subjective component requires that the state actor have acted with "deliberate indifference[;]" that is, with a state of mind equivalent to a reckless disregard of a known risk of harm. See Farmer, 511 U.S. at 835; Wilson, 501 U.S. at 303. In sum, an inmate may satisfy (1) the objective component by showing that he was deprived of "the minimal civilized measure of life's necessities," such as adequate food, clothing, shelter, sanitation, medical care and personal safety, Rhodes v. Chapman, 452 U.S. at 347-48; Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992), and (2)

the subjective component by demonstrating that prison officials knew of such substandard conditions or treatment and "acted or failed to act with deliberate indifference to a substantial risk of harm to inmate health or safety." Ingalls v. Florio, 968 F. Supp. 193, 198 (D.N.J. 1997).

Here, Fain's statement suggests that the officials of South Woods State Prison provided him with such conditions of confinement that required a certain supplement, and Fain was supplementing by borrowing unspecified hygiene products from other inmates. However, the amended complaint is silent as to the extent of the shortcomings in prison supply, the risk of harm that such shortcomings posed to Fain, and the nature of the hygiene products that Fain was forced to borrow in order to remedy the shortcomings.

Thus, as drafted, the amended complaint does not allow this Court to determine whether Fain is alleging that the prison officials deliberately endangered Fain's health by depriving him of "the minimal civilized measure of life's necessities[.]" A reader might equally deduce that Fain was denied such a basic necessity as a bar of soap and suffered a health injury because of the deprivation, or that he was borrowing from other inmates such luxury item as deodorants or skin-softening lotions, and his health was never endangered by a lack of such luxuries. See Miller v. Brown, 2007 U.S. Dist. LEXIS 46472 (D.N.J. June 26, 2007) ("While any person's desire for spotless cleaning, perfect washing

facilities and weekly laundry service is understandable, lack of such niceties cannot amount to a violation of constitutional magnitude") (citing <u>Gay v. Shannon</u>, 211 Fed. Appx. 113, 116 (3d Cir. 2006); <u>Moultrie v. Oxley</u>, 2007 U.S. Dist. LEXIS 34439, at *19-22 (D.N.J. May 10, 2007); <u>Hammock v. Bebow</u>, 2005 U.S. Dist. LEXIS 36702 (M.D. Pa. Aug. 30, 2005)); <u>see also</u> <u>Isby v. Clark</u>, 1997 U.S. Dist. LEXIS 11391 (N.D. Ind. June 18, 1997) (finding inmate's Eighth Amendment rights were not violated if he was provided with bar of soap, toothbrush, toothpaste and washcloth).

Although Fain's conditions-of-confinement allegations might potentially be viable, this Court presently will not permit Fain to "re-amend" his amended complaint because any such amendment would be futile. Indeed, the defendants named in Fain's original and amended complaint, <u>i.e.</u>, the members of the Parole Board, the prosecutor and the record custodian, cannot be the entities responsible for Fain's conditions of confinement at South Woods State Prison. As a result, Fain would be unable to re-amend his amended complaint without violating the Federal Rules of Civil Procedure, specifically Rule 20(a)(2), which limits the joinder of defendants, and Rule 18(a), which governs the joinder of claims. <u>See</u> Fed. R. Civ. P. 18(a), 20(a)(2).

Rule 20(a)(2) provides:

Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or

series of transactions or occurrences; and (B) any
question of law or fact common to all defendants will
arise in the action.

Fed. R. Civ. P. 20(a)(2)(A) and (B).  Rule 18 (a) provides : "A

party asserting a claim . . . may join, as independent or

alternative claims, as many claims as it has against an opposing

party."  Fed. R. Civ. P. 18(a).  Wright & Miller's treatise on

federal civil procedure explains that, where multiple defendants

are named, the analysis under Rule 20 precedes that under Rule 18:

> Rule 20 deals solely with joinder of parties and becomes
> relevant only when there is more than one party on one or
> both sides of the action.  It is not concerned with
> joinder of claims, which is governed by Rule 18.
> Therefore, in actions involving multiple defendants Rule
> 20 operates independently of Rule 18 . . .  Despite the
> broad language of Rule 18(a), plaintiff may join multiple
> defendants in a single action only if plaintiff asserts
> at least one claim to relief against each of them that
> arises out of the same transaction or occurrence and
> presents questions of law or fact common to all . . .

Charles Allen Wright, Arthur R. Miller, Mary Kay Kane, 7 Federal

Practice & Procedure Civil 3d § 1655; see also United States v.

Mississippi, 380 U.S. 128, 143 (1965) (where county registrars were

alleged to be carrying on activities which were part of series of

transactions or occurrences the validity of which depended upon

questions of law or fact common to all of them, joinder of

registrars in one suit as defendants was proper under Rule 20(a));

Ross v. Meagan, 638 F. 2d 646, 650 n.5 (3d Cir. 1981), overruled on

other grounds by, Neitzke v. Williams, 490 U.S. 319, 328 (1989)

(joinder of defendants is not permitted by Rule 20 unless both

commonality and same transaction requirements are satisfied).

In this case, Fain's now-added conditions-of-confinement allegations against unidentified prison officials have no commonality or transactional unity with his original claims against the parole board, the prosecutor or the record custodian. Thus, Fain's amended complaint cannot be "re-amended" to clarify such allegations. See Fed. R. Civ. P. 20(a)(2). As the United States Court of Appeals for the Seventh Circuit recently explained, a prisoner may not join in one case all defendants against whom he may have a claim, unless he or she satisfies the dual requirements of Rule 20(a)(2):

> Thus multiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits, not only to prevent the sort of morass that this 50-claim, 24-defendant suit produced but also to ensure that prisoners pay the required filing fees - for the Prison Litigation Reform Act limits to 3 the number of frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28 U.S.C. § 1915(g) . . . . A buckshot complaint that would be rejected if filed by a free person - say, a suit complaining that A defrauded the plaintiff, B defamed him, C punched him, D failed to pay a debt, and E infringed his copyright, all in different transactions - should be rejected if filed by a prisoner.

George v. Smith, 507 F. 3d 605, 607 (7th Cir. 2007). The Court, therefore, will dismiss Fain's conditions of confinement claim without prejudice subject to Fain filing a new and separate § 1983 complaint against an appropriate defendant.

   **D.   Correction of Records Claim**

   In his original complaint, Fain alleged that his record contained "fabricated evidence," "altered official documents," "false reports containing three murder convictions which never occurred[,]" and unspecified "scribbles" verifying "illegal tampering."  <u>See</u> Docket Entry No. 1, at 1-9.  Responding to the Court's question "[w]hat is the nature of specific falsifications and alterations that Plaintiff alleges . . . , e.g., Plaintiff shall . . . provide the Court with at least some examples . . . of such 'scribbles' and 'altered' language," Docket Entry No. 24, at 3 and n.4, Fain clarified, in his amended complaint, that:

(1)   the alleged falsifications and alterations involved (a) the entry of Gagliano's letter in opposition to Fain's parole into Fain's parole file, and (b) subsequent removal of Gagliano's letter from the file, <u>see</u> Docket Entry No. 30, at 2-3; <u>accord</u> Docket Entry No. 1, at 2-3; and

(2)   the alleged fabrication of evidence (and, presumably, "scribbles" not elaborated upon in the amended complaint) involved Washington's entry of a statement that Fain had a "conviction for murder under the title of 'Summary of Prior Convictions,'" and the fact that "the false murder conviction was left in the document as official record[,]" Docket Entry No. 30, at 2-3.

   Fain's Department of Correction record does not indicate any

conviction for the *criminal offense* of murder.   The foregoing, however, does not mean that Fain's record does not include any charges and convictions for homicide.   To the contrary, in addition to Fain's two charges and convictions for robbery, plus two charges and convictions for possession of weapon for unlawful purpose, Fain's prison record reflects three charges and convictions for manslaughter (non-aggravated and aggravated).   See <<https://www6. state.nj.us/DOC_Inmate/details?x=1057262&n=0>>.   According to the prison records, Fain was sentenced on these manslaughter charges on March 17, 1989, September 2, 2003, and November 12, 2004.   See id.

Read against Fain's allegations void of any reference to a particular provision of New Jersey Code of Criminal Justice, the publically available record suggests that Gagliano and Washington's observations (to the effect that Fain was convicted on charges for murder) reflected not an error in Fain's records but rather Gagliano and Washington's opinions employing the colloquial usage of the term "murder," i.e., using it to refer to a "killing of another human being" rather than to a specific criminal offense. This Court, however, cannot rule out the possibility that Fain's records may contain an actual error, such that one or more of Fain's merged manslaughter charges reflected in the New Jersey Department of Corrections' record might be erroneous,[13] or a certain

---

[13]

However, Fain, in no ambiguous terms, admitted having a conviction for at least one aggravated manslaughter charge.   See

record (other than that available on the New Jersey Department of Corrections' official website) might, in fact, contain a non-existing conviction for an offense based on N.J.S.A. 2C:11-3, the New Jersey murder statute.[14]  Consequently, it is plausible that Fain may have a legitimate claim based on an error contained in his records.  However, such action for expungement of record (or other correction of the record error) cannot be brought under § 1983 by a person in Fain's current circumstances.

The foregoing conclusion ensues from the fact that federal courts are courts of limited jurisdiction. See Mansfield, C. & L. M. Ry. Co. v. Swan, 111 U.S. 379, 383 (1884).  "[T]hey have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto." Bender v. Williamsport Area School Dist., 475 U.S. 534, 541 (1986).  A district court may exercise original jurisdiction over "Cases, in Law and Equity, arising under this Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their authority." U.S. Const. art. III., § 2; see also 28 U.S.C. § 1331.

---

Docket Entry No. 30, at 6.

[14]

Under the New Jersey Code of Criminal Justice, criminal homicide constitutes murder when the defendant purposely or knowingly causes death or serious bodily injury resulting in death; a person can be found guilty of the lesser charge of aggravated manslaughter if the person recklessly causes death under circumstances manifesting an extreme indifference to human life. See State v. Wilder, 2008 N.J. LEXIS 14, at 19-20 (N.J. 2008).

Section 1983 of Title 42 of the United States Code authorizes a person to seek redress for a violation of his federal civil rights by a person who was acting under color of state law. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

To recover under 42 U.S.C. § 1983, a plaintiff must show two elements:  (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).  Consequently, Fain's statement made in the original complaint that "[t]he Court should find it necessary to order the defendants to retract all falsifications [in] plaintiff's record," Docket Entry No. 1, at 10, having no similar counterpart in Fain's amended complaint, see generally Docket Entry No. 30, does not state a § 1983 claim even if Fain had included a similar statement in his latest submission.

A nearly identical inquiry was presented to the Court of Appeals for the Sixth Circuit in Walton v. Michigan Dep't of

Corrections, 165 F.3d 29 (6th Cir. 1998).  In Walton, a former
Michigan state prisoner brought an action against the Michigan
Department of Corrections seeking monetary relief and correction of
his records.  The plaintiff alleged that a number of parole
violator warrants had been issued against him that stated that he
was on parole from a conviction for malicious destruction of a
bridge, a crime of which he had never been convicted.  See id.  The
district court dismissed the complaint on the ground of Eleventh
Amendment immunity, and the appellate court affirmed noting that

> even if amendment of the complaint to add individual
> defendants had been allowed, the complaint would still
> have failed to state a claim under § 1983, because it did
> not allege conduct by a state actor which deprived [the
> ex-prisoner] of a right secured by the Constitution or
> laws of the United States.  See Christy v. Randlett, 932
> F.2d 502, 504 (6th Cir. 1991).  There is no
> constitutionally protected right not to have
> typographical errors made in a record.  Cf. Duke v.
> White, 616 F.2d 955, 956 (6th Cir. 1980)(per curiam) (no
> constitutional right to expungement of records).

Id.

Here, Fain's allegations suffer of identical shortcomings.
Nothing in Fain's amended complaint suggests that any entity acting
under color of law is violating--or about to violate--Fain's rights
by relying on Fain's record allegedly containing the erroneous
"conviction for murder."[15]  Therefore, Fain's due process rights are

---

[15]
An allegation that the Parole Board did violate Fain's rights
while he was incarcerated and calling for curative parole hearing
presents a moot Wilkinson challenge, as discussed supra.

not implicated.[16]  Compare Williams, 85 Fed. Appx. at 304 ("a claim of constitutional magnitude is raised where a [litigant] alleges: (1) that information is in his file, (2) that the information is false, and (3) that it is relied upon to a constitutionally significant degree") (internal quotation marks and citation omitted).  Stripped of any constitutional aspect, Fain's allegations related to his desire to have his record corrected fail to state a cognizable § 1983 claim.[17]  Consequently, Fain's application for correction of records, if such application was intended by Fain to be stated in his amended complaint, will be dismissed without prejudice to Fain's bringing an appropriate action.

---

[16]

Fain's pertinent allegations contained in his amended complaint are limited to his observation that "[n]ow plaintiff is suffering from the amount of time without employment every time plaintiff submits an employment application for a job which he has to explain the three year gap." Docket Entry No. 30, at 6. However, nothing in Fain's amended complaint indicates that Fain's prospective employers are acting under color of law, or that they are discriminating Fain in reliance on his criminal record, or even that Fain is disclosing the particularities of his criminal record to his employers.  See id.  Since Fain merely asserts that he is disclosing the correct fact of the period of his unemployment to potential private employers, these allegations cannot reasonably be construed as a § 1983 due process claim.

[17]

The Court's finding does not suggest that a private person may never maintain a successful legal action for injunctive relief in the form of correction of record.  See, e.g., Ollestad v. Kelley, 573 F.2d 1109, 1111 (9th Cir. 1978) (noting that, "[a]fter . . . a request [for correction of record] been properly made and considered, if [the litigant] remains dissatisfied, he may then seek injunctive relief to compel the agency to correct his records") (citing 5 U.S.C. § 552a(g)(2)(A)).  This Court, however, expresses no opinion as to what type of state or federal action could be employed in Fain's particular circumstances.

**CONCLUSION**

For the foregoing reasons, Fain's amended complaint will be dismissed. Fain's application for compensatory and punitive damages based on his allegations calling in question various aspects of the decision reached by the Parole Board as to whether and/or when Fain should have been released on parole will be dismissed without prejudice to Fain's filing of another § 1983 action after Fain secures a judicial order reversing or otherwise declaring invalid such parole decision.[18]  See Heck v. Humphrey, 512 U.S. 477.

Fain's application based on the holding of Wilkinson v. Dotson and seeking a curative parole hearing with respect to his expired sentence will be dismissed with prejudice as moot.

Fain's application for correction of Fain's certain records will be dismissed for failure to state a claim upon which relief may be granted but without prejudice subject to Fain's filing of an appropriate legal action with an appropriate tribunal.

Fain's allegations with respect to his conditions of confinement during his incarceration at South Woods State Prison will be dismissed without prejudice subject to Fain's filing a new and separate § 1983 action naming an appropriate defendant.

---

[18]    A writ of habeas corpus appears to be no longer available to Fain in view of expiration of his prison term.  See 28 U.S.C. § 2254 (stating the "in-custody" requirement).  This Court, however, expresses no opinion as to availability of state collateral review.

An appropriate order accompanies this Opinion.

/s/ Joel A. Pisano
**JOEL A. PISANO**
**United States District Judge**

Date:    April 10, 2008